IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

JERRIE G. MAGRUDER                                                                    PLAINTIFF

VS.                                                                    CIVIL NO. 3:18-CV-588 HTW-LRA

ELLIOT H. BRASHIER and
ALLSTATE INSURANCE                                                                    DEFENDANTS
COMPANY

## ORDER GRANTING PARTIAL SUMMARY JUDGMENT

Before this court is the motion of the Defendant, Allstate Insurance Company (hereafter "Allstate"), for partial summary judgment in its favor, under Rule 56 of the Federal Rules of Civil Procedure **[doc. no. 12]**. Allstate contends there is no factual or legal basis for Plaintiff's bad faith and extra-contractual damage claims, and that those claims should be dismissed as a matter of law. The Plaintiff, Jerrie G. Magruder (hereafter "Magruder") opposes the motion, alleging that Allstate has unreasonably, in bad faith, refused to compensate her under her policy of uninsured/ underinsured motorist coverage. Briefing has been completed and the court is ready to make its ruling.

### I.     INTRODUCTION

Magruder filed the instant lawsuit on August 3, 2018, in the Circuit Court of Hinds County, Mississippi ("state court"). Allstate removed this suit to this federal district court on August 27, 2018. *Notice of Removal* [doc. no. 1], asserting "diversity of citizenship" as grounds for federal subject matter jurisdiction. Title 28 U.S.C. §1332[1] establishes federal court jurisdiction over

---
[1] **28 U.S.C. § 1332 Diversity of citizenship; amount in controversy; costs**

cases and controversies involving citizens of different states, where the amount in controversy exceeds the sum of $75,000.00, exclusive of costs and interest.

The requisites of diversity of citizenship are here met because Allstate is incorporated in the State of Delaware and maintains its principal place of business in Illinois, whereas Plaintiff is a citizen of Mississippi. Magruder did not specify in her Complaint the amount of damages she is pursuing; but because she is seeking punitive damages[2], the threshold $75,000 amount is presumed to be met. *Complaint* [doc. no. 1-1 at ¶¶ 4.8, 5.1]. See e.g., *Paris v. Bevard*, 2015 WL 3885501*1-2 (S.D. Miss. 2015) ("federal courts in Mississippi have consistently held that a claim for an unspecified amount of punitive damages is deemed to exceed the federal jurisdictional minimum,"). See also *St. Paul Reinsurance Co., Ltd. v. Greenberg,* 134 F.3d at 1250, 1253-55 (5th Cir. 1998) (plaintiff's punitive damages are included in calculation of amount in controversy); *Marcel v. Pool Co.*, 5 F.3d 81, 84-85 (5th Cir. 1993); *Myers v. Guardian Life Ins. Co. of America, Inc.,* 5 F.Supp.2d at 423, 428-29 (N.D. Miss. 1998); *Allstate Ins. Co. v. Hilbun,* 692 F.Supp. 698, 701 (S.D. Miss. 1988). .

An automobile accident forms the backdrop for this action. Magruder alleges that on August 7, 2015, Defendant Elliot H. Brashier (hereafter "Brashier") negligently caused the vehicle he was driving to collide with the vehicle being driven by Magruder's husband, and in which Magruder was riding as a passenger.

Magruder has settled with Brashier, the tortfeasor here, for $25,000.00, the limits of Brashier's policy of insurance with Mendoto Auto Insurance Company. Magruder additionally received $10,000.00 under her own policy of insurance with Allstate under the PIP (personal injury protection) benefits, for a total of $35,000.00. At the time of the accident Brashier was

---

(a) The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between --
(1) citizens of different States; . . .

also insured under an Allstate policy which included $300,000.00 in uninsured/underinsured motorist ("UM") benefits. Magruder claims that she incurred at least $23,000.00 in medical bills, and that she endured pain and suffering and incurred other damages, such that the $35,000.00 she has received does not adequately compensate her. Brashier, then, whose policy limit was only $25.000.00, is an "underinsured motorist tortfeasor," according to Magruder, and she [Magruder] is entitled to recover from Allstate under her Underinsured/Uninsured Motorist ("UM") coverage.

Allstate though, has unreasonably refused to provide her with the UM benefits owed to her and for which she has paid premiums, says Magruder. Allstate's actions, she contends, were committed in "bad faith," entitling her to recover extra-contractual damages over and above the amount owed under the UM policy. Allstate responds that Plaintiff is unable to show that Allstate acted with "maliciousness" or gross negligence," as required for establishing a bad faith claim, or even that Allstate has denied Plaintiff's claim at all. Allstate asks this court to grant its motion for partial summary judgment.

## II. FACTUAL BACKGROUND

Both sides have submitted their version of the facts. Allstate provided an itemization of undisputed facts in its brief, and Magruder's recitation of the facts does not differ significantly from that itemization. Magruder does not, however, specifically deny or refute the facts as itemized by Allstate. Additionally, Allstate's itemization, unlike that of Magruder, is substantiated by inclusion of the exhibits and correspondence referenced. The facts as itemized by Allstate are as follows:

ITEMIZATION OF UNDISPUTED FACTS

**I. The Accident**
1.      On August 7, 2015, Plaintiff was involved in a side swipe motor vehicle accident along the interstate in Jackson, Mississippi. (Exhibit 1) Plaintiff did not

have any complaints of pain at the accident scene, and the vehicle was driven from the accident scene. (*Id.*)

2. The accident resulted in minimal property damage to Plaintiffs vehicle. (*Id*)

**II. Brief Summary of Plaintiff's Post-Accident Medical Treatment**

2. Several days after the accident, Plaintiff presented to her primary care physician with complaints of soft tissue injuries. (Exhibit 2) During the next few months, Plaintiff followed up with her primary care physician and also received intermittent physical therapy treatment. (*Id.*)

3. Over the course of the next two to two and a half years, with multiple gaps in treatment, Plaintiff occasionally treated with her primary care physician and received some physical therapy treatment. (*Id.*) Plaintiff claims to have sustained approximately $23,000.00 in medical expenses as a result of the accident. (*Id.*) Plaintiff's other bodily injury damages are presently unknown. (*Id.*)

**III. Insurance Policies**

4. Elliot Brashier, the alleged at-fault driver, was insured with Mendoto Auto Insurance Company with a liability policy of $25,000.00 at the time of the accident. (Id.)

5. At the time of the accident, Plaintiff was insured under an Allstate policy, which among others, contained uninsured/underinsured motorist benefits of $300,000.00 and PIP benefits of $10,000. (Exhibit 3)

**IV. Pre-Suit Occurrences**

6. Below is a chronology and outline of activity prior to Plaintiffs lawsuit being filed:

| **Dates** | **Occurrences** |
|---|---|
| 4.23.18 | Allstate receives a letter of representation from Plaintiff's counsel and requests information for payments made to date on behalf of Plaintiff. (Exhibit 4) |
| 5.18.18 | Allstate submits correspondence acknowledging representation and advises that policy limits of $10,000.00 in PIP benefits have been paid on behalf of Plaintiff. (Exhibit 5) |
| 7.24.18 | Plaintiff's counsel submits correspondence to Allstate, which, among others, requests that Allstate consent to the $25,000.00 policy limits settlement offer from Brashier's liability carrier and waive subrogation. The letter further provides that "we presently are in the process of determining how much in lost wages that [Plaintiff] incurred as a result of other injuries, <u>and we will be back in touch promptly with an offer to settle [Plaintiff's] UM claim with Allstate.</u>" (Exhibit 3) |
| 7.28.18 | Allstate acknowledges Plaintiff's 7.24.18 correspondence and UM claim.(Exhibit 6) |
| 8.8.18 | Allstate submits correspondence to Plaintiff, consenting to the settlement with the liability carrier and waives subrogation. (Exhibit 7) |

> **V. Plaintiff's Lawsuit**
> 7.  Allstate was served with Plaintiff's lawsuit on August 8, 2018. [docket no. 1]. Outside of Plaintiff's July 24, 2018 letter to Allstate, in which Plaintiff advised that it would submit lost wage information and submit a settlement offer, Plaintiff did not submit any further documents or information to Allstate prior to filing suit.
> 8.  Plaintiff alleges to have incurred $23,000.00 in medical expenses as a result of the accident. (*Id*.). To date, Plaintiff has received $10,000.00 in PIP benefits through her Allstate policy, and Plaintiff has also received $25,000.00 from the liability carrier. (Exhibits 2,4, and 8)

*Memorandum In Support of Motion for Partial Summary Judgment* [doc. no. 13 pp. 2-4].

As previously stated, Plaintiff does not deny or specifically address the facts as listed by Allstate. For instance, at item 1, Allstate says Magruder did not complain of pain at the accident scene. Magruder, on the other hand, without denying that fact, states "Plaintiff *experienced* pain at the accident scene and has continued to experience pain." *Plaintiff's Memorandum Supporting Response in Opposition*. [doc. no. 17 p.2].

Allstate describes damage to the vehicle as "minimal". Magruder does not deny that assessment, but states simply that "Plaintiff's vehicle sustained damage from the collision." *Plaintiff's Memorandum Supporting Response in Opposition*. [doc. no. 17 p.2]. As to paragraph 3, both sides acknowledge that Magruder sustained injuries; but Plaintiff, not unexpectedly, labels them as "serious" injuries.

Allstate says Brashier was insured with Mendoto Auto Insurance at the time of the collision for $25, 000. Magruder does not dispute this, but adds that Brashier was an underinsured motorist, a conclusory statement, the truth or falsity of which will be determined at the trial on the contractual issues. At item 5, both sides recognize that Plaintiff is insured under a UM policy with Allstate. The two sides characterize the facts in item 6 of the "Itemization" somewhat differently, but the facts are essentially the same. Magruder says her counsel

corresponded with Allstate multiple times[3] during the pretrial phase, while Allstate contends that it received only two letters from Plaintiff's counsel prior to the lawsuit being filed. So far, there is no real difference in the facts as recited by each side, and certainly no disputed issues of material fact.

The last correspondence Plaintiff received from Allstate before the lawsuit was filed said they were still evaluating losses and would be back in touch with Allstate with an offer. This lawsuit was the next correspondence received by Allstate from Plaintiff, however. Plaintiff does not dispute this.

### III. PROCEDURAL BACKGROUND

Plaintiff, in her Complaint, named as defendants Elliott H. Brashier and Allstate Insurance Company. *Complaint* [doc. no. 1-1]. Allstate removed the suit from state court to this United States District Court on August 27, 2018. Allstate then filed a motion to sever the claim against Brashier from the claims against Allstate, and to partially remand the case against Brashier to state court. [doc. no. 5]. Plaintiff's claims against the tortfeasor, Brashier, stemmed from distinctly different events and involved different questions and proofs than her claims against her insurer for breach of contract and bad faith. [doc. no.29]. See *Hegwood v. Williamson*, 949 So. 2d 728, 732 (Miss. 2007) (where a plaintiff injured in a car wreck joins a negligence claim against the other driver with a bad faith claim against the insurance company in one suit, severance is required). The claims were severed and the case against Brashier was remanded to state court, while the claims against Allstate remained with this court. Against

---

[3]Magruder's version states as follows:
> Plaintiff's counsel corresponded on multiple occasions with Allstate providing information on the case and attempting to settle Plaintiff's claim (Allstate Claim No. 0379607046). Plaintiff's counsel explained the nature of the accident, injuries, and coverage, but Allstate has refused to provide Plaintiff her due compensation pursuant to the UM coverage under the Subject Policy or even respond to Plaintiff's inquiries.

*Plaintiff's Memorandum Supporting Response in Opposition*. [doc. no. 17 p.2-3].

Allstate, Magruder asserts claims for: 1) underinsured motorist benefits; and 2) bad faith and extra-contractual damages.

Allstate filed the motion *sub judice* seeking **partial** summary judgment. Allstate contends that the bad faith and extra-contractual damages claims are unsupported and should be dismissed as a matter of law, and asks this court to grant partial summary judgment in its favor as to those claims only. The remaining contractual dispute is unaffected by this motion.

## IV. LEGAL STANDARD

Rule 56 (a) of the Federal Rules of Civil Procedure provides that summary judgment is appropriate "[i]f the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a).

To rebut a properly supported motion for summary judgment, the opposing party must show, with "significant probative evidence," that there exists a genuine issue of material fact. *Hamilton v. Segue Software, Inc.,* 232 F.3d 473, 477 (5th Cir.2000). In deciding whether summary judgment is appropriate, the Court views facts and inferences in the light most favorable to the party opposing the motion. *United States v. Diebold, Inc*. 369 U.S. 654, 655 (1962).

Mere conclusory allegations are not competent summary judgment evidence, and such allegations are insufficient, therefore, to defeat a motion for summary judgment." *Eason v. Thaler,* 73 F.3d 1322, 1325 (5th Cir.1996). "There is no material fact issue unless the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *RSR Corp.,* 612 F.3d at 858. "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law. An issue is 'genuine' if the evidence is sufficient for a reasonable

7

jury to return a verdict for the nonmoving party." *Hamilton,* 232 F.3d at 477 (citing *Anderson,* 477 U.S. at 248).

## V. ANALYSIS

Because this court's subject matter jurisdiction is based on diversity of citizenship, the substantive law of the forum state applies. *Hanley v. Forester*, 903 F.2d 1030 (5th Cir. 1990) (citing *Erie R. Co. v. Tompkins,* 304 U.S. 64, 79-80 (1938). This court now undertakes to examine Plaintiff's claim for bad faith pursuant to the jurisprudence of the State of Mississippi.

### Bad Faith

In Mississippi, as in many other jurisdictions, an insurance company may be held liable for the tort of bad faith and for extra-contractual damages, such as punitive damages, for certain wrongful conduct. Contractual remedies by themselves do not provide strong incentives to force insurers to pay legitimate claims. Lawsuits would not have a strong deterrent effect if the only consequence to an insurer for failing to pay a legitimate claim was that the company would be forced to pay the contract amount plus some interest.

Extra-contractual remedies have, therefore, come to be recognized by the courts. The tort claim of bad faith is such a remedy. When Mississippi Courts refer to the tort of bad faith, they are referring to a remedy in insurance cases whereby the plaintiff may recover punitive damages. It is meant not only to deter the insurance company from denying valid claims, but also to punish the insurer through the assessment of punitive damages in egregious cases. See *Standard Life Ins. Co of Indiana v. Veal,* 354 So.2d 239, 248 (Miss. 1977).

Under Mississippi law, insurers are under a duty to "perform a prompt and adequate investigation and make a reasonable, good faith decision based on that investigation. *Broussard v. State Farm Fire & Cas. Co.,* 523 F.3d 618, 627 (5th Cir.2008) (quoting *Liberty Mut. Ins. Co.*

8

*v. McKneely,* 862 So.2d 530, 535 (Miss.2003)). If an insurer denies a claim in bad faith, it may, thus, be liable for punitive damages. A bad faith claim is an independent tort, separate and apart from the underlying contract claim. *Hartford Underwriters Ins. Co.,* 936 So.2d at 895 (citation and internal quotation marks omitted).

To establish a bad faith claim, a plaintiff must show that the insurer denied the claim "(1) without an arguable or legitimate basis, either in fact or law, and (2) with malice or gross negligence in disregard of the insured's rights." *Dey v. State Farm Mutual. Auto. Ins. Co.,* 789 F.3d 629, 633 (5th Cir. 2015) (citing *Hoover v. United Servs. Auto. Ass'n,* 125 So.3d 636, 643 (Miss.2013). One definition of bad faith was discussed in the 2008 Mississippi Supreme Court case of *Limbert v. Mississippi Univ. for Women Alum. Ass'n. Inc.* The Court there said, "[b]ad faith has been defined ... as requiring 'a showing of more than bad judgment or negligence; rather, 'bad faith' implies some conscious wrongdoing 'because of dishonest purpose or moral obliquity.'" *Limbert v. Mississippi Univ. for Women Alum. Ass'n. Inc.,* 998 So.2d 993, 998 (Miss.2008) (quoting *University of Southern Miss. v. Williams,* 891 So.2d 160, 170–71 (Miss.2004)). See also *Cenac v. Murry,* 609 So.2d at 1272.

Plaintiff here cannot make a showing of the required elements for bad faith. Plaintiff cannot show either of the two components outlined in *Dey* and *Hoover.* Allstate neither acted with malice or gross negligence with disregard to Magruder's rights, nor denied the claim without arguable reason. Nothing approaching malice, dishonest purpose, moral obliquity or fraud has been shown. Magruder cannot even show that Allstate denied her claim at all; but as Allstate maintains, it had arguable reasons for doing so.

Both letters sent to Allstate by Magruder's counsel indicated that Plaintiff was still in the process of gathering information and that Allstate would be back in touch with an offer. The

9

letter of April 23, 2018, from Plaintiff's Attorney, John Nisbett, to Nicole Fagan of Allstate included this language: "We are presently in the process of obtaining all of Ms. Magruder's medical records and billing related to this matter and will provide this information to Allstate in the form of a complete demand package as soon as we have received all necessary records and information." *Exhibit 4 to Defendant's Motion for Partial Summary Judgment.* [doc. no. 13-4]. In a letter dated July 24, 2018, Plaintiff's counsel, John Nisbett, stated the following. "We presently are in the process of determining how much in lost wages that Ms. Magruder incurred as a result of her injuries, and we will be back in touch promptly with an offer to settle Ms. Magruder's UM claim with Allstate." *Exhibit 2 to Defendant's Motion for Partial Summary Judgment.* [doc. no. 13-2 p. 2]. L

Instead of getting back in touch with an offer, however, Plaintiff filed the instant lawsuit on August 3, 2018, less than three weeks after the July 24, 2018 letter, and just a few days before the expiration of the three-year limitations period. Allstate was sued before it had received the additional information Plaintiff promised. The insurer did not have an opportunity to evaluate all of the relevant information in order to make a decision on Plaintiff's UM claim.

In deciding whether summary judgment is appropriate under Rule 56(a) of the Federal Rules of Civil Procedure this court must view the facts and inferences in the light most favorable to the non-movant. This court, in viewing the facts in the light most favorable to Magruder, must agree with Defendant Allstate, the movant here, that at the time this suit was filed, Allstate had not "denied" Plaintiff Magruder's claim and, thus, there is no basis for a bad faith lawsuit.

If there is no claim denial, there is no jury issue of bad faith. *Essinger v. Liberty Mutual Fire Ins. Co.,* 529 F.3d 264, 274 (5th Cir.2008); *Dedeaux v. State Farm Mut. Auto Ins. Co.,* 2013 WL 318727 *6 (S.D. Miss. 2013). As in *Essinger,* the insurer in the instant case "explicitly held

10

open the door to considering further information from the [insured] on why more was owed." *Id.* at 273. The Fifth Circuit affirmed the district court's dismissal of the insureds' bad faith claim in *Essinger*, because it concluded that no denial ever occurred. *Id.* at 272. Here, too, the evidence before this court demonstrates that there was no "denial" of Magruder's claim.

Because the evidence before the Court is insufficient to establish a denial of coverage and reflects what is essentially what Allstate terms a "pocketbook dispute", that is, "a difference of opinion as to claim value," *Reply Memorandum in Support of Allstate's Motion For Partial Summary Judgment* [doc. no. 28 p.4], this court is of the opinion that Defendant is entitled to summary judgment on Plaintiff's bad faith claim. *See Essinger I,* 529 F.3d at 272, 274. This court is not basing its decision solely on the fact that denial of the claim has not taken place. It is evident that Allstate would have an arguable basis for denial. In addition to the fact that Plaintiff's counsel promised that additional information about Plaintiff's medical bills and damages would be forthcoming, Allstate asserts that the vehicular damage to Magruder's car was minimal, that Magruder's medical treatment was sporadic and inconsistent, and that $35,000.00 was adequate compensation to Plaintiff for her injuries and damages.

This court is not deciding, however, that Allstate is within its rights to deny to Magruder additional recovery under the UM claim. That issue is not before this court at the present time, but remains to be decided at the trial of this cause. This court is only deciding whether a bad faith claim, and, consequently, an extra-contractual damages/punitive damages case, is presented by these facts under Mississippi law.

## Punitive Damages

Miss. Code Ann. §11-1-65 describes the requirements that must be met in order for punitive damages to be awarded. It provides that the plaintiff must prove by "clear and

convincing evidence" that the defendant acted with "actual malice, gross negligence which evidences a willful, wanton or reckless disregard for the safety of others, or committed actual fraud." Miss. Code Ann.§ 11-1-65 (1)(a). As with other claims for punitive damages, under Mississippi law a claim for bad faith in the insurance context requires a showing of maliciousness, gross negligence, recklessness, or fraud by a heightened standard of "clear and convincing" evidence. *Hartford Underwriters Ins., Co. v. Williams,* 936 So.2d 888, 895 (Miss.2006); see also *Dey v. State Farm Mut. Auto Ins. Co,* 2013 WL 6859176, at *6 (S.D. Miss. Dec. 30, 2013), *aff'd* 789 F.3d 629 (5th Cir. 2015). The court must decide in each case whether the issue of punitive damages may be submitted to the trier of fact for consideration. Miss. Code Ann. §11-1-65 (1)(d).

Where an insurer has not *denied* coverage, but only disputed the amount of the claim, as Allstate contends is the case here, or if the insurer has merely *delayed* payment, the Mississippi Supreme Court has been very reluctant to allow punitive damages. *Ladner v Geico Indem. Co.,* 2017 WL 812693, at *2 (S.D. Miss. Feb. 27, 2017) (quoting *Tutor v. Ranger Ins. Co.,* 804 F.2d 1395 (5th Cir. 1986)). "If there is no claim denial, then there is no jury issue of bad faith and dismissal is warranted as a matter of law." *Dedeaux v. State Farm Mut. Auto. Ins. Co.*, 2013 WL 318727 *6 (S.D. Miss. 2013). It follows that if there is no bad faith, there are no punitive damages.

Therefore, if Plaintiff has not made the sufficient showing for bad faith (and she has not here), punitive damages are not allowed. That is not the end of the story, however. Allstate, in its motion for partial summary judgment, asks this court to dismiss Plaintiff's claim for all extra-contractual damages.

12

**Extra-contractual Damages**

Defendant has asked this court to grant summary judgment dismissing Plaintiff's claims for all extra-contractual damages. Plaintiff does not address this issue in her brief in opposition to Allstate's motion.

Extra-contract liability includes damages that may be recovered in excess of the benefits provided by a contract of insurance. The term includes an action against an insurer in which the plaintiff is seeking more than what the insurer has contracted to pay, whether compensatory or punitive. Extra-contractual damages are different from punitive damages and serve a different purpose in an insurance action. As the Mississippi Supreme Court stated in *Fulton v. Mississippi Farm Bureau Casualty Ins. Co.,* "[w]hen an insurer denies a claim without an arguable basis, but the jury does not award punitive damages, extra-contractual damages may provide an intermediate form of relief." *Fulton,* 105 So.3d 284, 288 (Miss. 2012); Extra-contractual damages, then, may consist of damages other than punitive. *Windmon v. Marshall,* 926 So.2d 867, 874 n.2 (Miss. 2006) ("Extra-contractual damages include reasonable attorney fees, court costs and other economic damages); see also *Universal Life Ins. Co. v. Veasley,* 610 So.2d 290 (Miss. 1992).

Two Mississippi cases dealing with extra-contractual damages merit this court's attention. The case of *Universal Life v. Veasley*, 610 So.2d 290 (1992), informs us that punitive damages are always extra-contractual damages (because they are outside the payments provided for by the contract); but extra-contractual damages are not necessarily punitive damages in the insurance context. *Veasley,* 610 So.2d at 295. In *Veasley,* the Mississippi Supreme Court reversed an award of punitive damages because there was no evidence of bad faith; yet the Court affirmed an award of extra-contractual damages for an emotional distress claim. *Veasley,* 610

13

So.2d at 294-295. The Court stated in that case, that extra-contractual damages may be available even when punitive damages are not.

In *Fulton v. Mississippi Farm Bureau Casualty Ins. Co*., the jury found that Farm Bureau had negligently delayed investigating and paying Plaintiff's claim, but it did *not* find that Farm Bureau had breached its insurance contract or acted in bad faith. The jury awarded to Plaintiff the approximately $25,000.00[4] remaining under Fulton's UM policy and an additional $10,000 in extra-contractual damages, but found no punitive damages. *Id.,* 105 So.3d 284 (Miss. 2012).

In both *Fulton* and *Veasle*y, extra-contractual damages were awarded, and punitive damages were not. As stated by the Fifth Circuit Court of Appeals in *Essinger*, *supra,* extra-contractual damages, as a lesser level of damages," may be appropriate where the insurer lacks an arguable basis for delaying or denying a claim, but the conduct was not sufficiently egregious to justify the imposition of punitive damages." *Essinger,* 534 F.3d at451 (citing *Veasley,* 610 So.2d at 295). In the instant case, this court has previously determined that Allstate had an arguable basis for denying Magruder's claim, even though such denial has not yet taken place. This dictates against a grant of other extra-contractual damages. Furthermore, Magruder only denied that Allstate was entitled to punitive damages, and made no argument whatever in opposition to any lesser extra-contractual damages.

## VI. CONCLUSION

There are no genuine issues of material fact remaining as to Plaintiff's bad faith claim or her claim for extra-contractual/punitive damages. For all the reasons herein stated, this court **grants** Allstate's Motion for Partial Summary Judgment **[doc. no. 12].** This court dismisses Plaintiff's claims for bad faith and for extra-contractual damages, including punitive damages.

---

[4] The total amount available under Fulton's UM policy was $50,500.00 of which Farm Bureau had already paid $25,502.50, leaving $24,997.50 remaining of the UM policy amount.
*Fulton v. Mississippi Farm Bureau Casualty Ins. Co*.,

14

Plaintiff's contract claims were not the subject of this motion and await resolution at the trial of this cause.

SO ORDERED AND ADJUDGED, this the 14th day of August, 2019.

s/ HENRY T. WINGATE
UNITED STATES DISTRICT JUDGE